### ELIZABETH SCHMIDT v. BALTIMORE & OHIO RY.

PEDESTRIAN, KILLED AT RAILROAD CROSSING, HAVING UNOBSTRUCTED VIEW OF TRACK FOR 1200 FEET, IS GUILTY OF NEGLIGENCE PRECLUDING RECOVERY NOTWITHSTANDING DANGEROUS AND UNLAWFUL SPEED OF TRAIN.

An action does not lie against a railway company for the death of a pedestrian by being struck by a train at a crossing, where the decedent was in full possession of his sight and hearing and had an unobstructed view of the track for 1,200 or 1,500 feet, notwithstanding the train which struck him was running at a high and dangerous rate of speed, and an ordinance was violated in so doing, and no signals were sounded, and there were obstructions along the track but not in the line of view of the decedent.

ERROR to common pleas court.

*Reed & Beach,* for plaintiff in error.
*Cummings, McBride & Wolfe,* for defendant in error.

## PER CURIAM.

The plaintiff in error, as administratrix of the estate of Matthias Schmidt, brought suit against the Baltimore & Ohio Railroad Company in the court of common pleas of this county seeking to recover for the unlawful causing of the death of said decedent. She averred in her petition, as a ground of negligence, that the view from the crossing of North Main street in a northwesterly direction was obstructed by the tool house on the lands of defendant, by ties and railroad material piled thereon, by telegraph poles erected on said lands, and by cars then standing on the side track, so that persons and the decedent, traveling along said street or highway, could not at the time of the alleged accident hear or see trains on the railroad approaching said crossing until such trains were at or near said crossing.

She further avers that the crossing gates, with an employe in charge thereof, were under the direction of the defendant, it having assumed the care and control over said crossing; that

Richland County.

it had, up to that time, given notice to persons of the approach of its locomotive or cars, of which facts, the defendant assuming care and control and the giving of notice to persons approaching, the decedent had knowledge.

She then avers that Matthias Schmidt on the evening of January 25, 1907, at about 7 o'clock, was going north on said highway and reached the crossing in question, that the defendant carelessly and negligently managed and controlled one of its trains of cars so that it approached that crossing at a high rate of speed of more than fifty miles an hour, in violation of an ordinance of the city, without giving any notice or signal of the approach of said train, that it failed to give any signal of danger by blowing a whistle or ringing of bell, or taking any precaution whatever for the safety of passers over said crossing; and that, in consequence of said negligence, the decedent was struck and killed, without any fault on his part.

Issue is taken with the averments of this petition, by the company's denying the averments of the petition, except its corporate capacity, the location of the highway, and that the decedent was struck by one of the defendant's locomotives and killed, and it avers that a want of due care on the part of Matthias Schmidt contributed to his death.

A jury was impaneled and the case submitted, and, at the close of all the evidence, the defendant, through its counsel, moved the court to direct a verdict in its favor, which the court did, and the jury returned a verdict for the defendant.

To the action of the court exceptions were taken, a motion for new trial filed, and this proceeding in error seeks now to reverse the judgment of the court of common pleas.

It is the contention of counsel for the plaintiff in error that the record discloses that there were certain obstructions upon the right of way of the defendant company, which prevented the deceased from seeing the approach of the train until within such proximity of the crossing that he could not escape injury in attempting to pass over the same while in the exercise of due care. The obstructions that are shown by the testimony are a tool house, signal post and certain lights known as switch lights, which have been described to us by counsel as

being "bull's-eyes," which caused a divergence of the lights to an extent which it is claimed would have obstructed a view of the train.

It appears from this record that the deceased, on the night in question, about the hour of 7 o'clock, was passing north on Main street over and across the lines of the Pennsylvania company, which runs in a southwesterly and northwesterly direction across this street. To the north of the Pennsylvania lines are the lines of the Baltimore & Ohio, consisting of a main line and siding. Accepting the view of the plaintiff's testimony, the deceased was struck while just going on the track of the main line of the Baltimore & Ohio. Railroad Company by a fast train approaching that crossing from the northwest.

It is contended by counsel for plaintiff in error that at or near the place where the deceased was struck the view of the main line of the Baltimore & Ohio would be obstructed by the tool house, signal post and switch lights, and that there were such facts developed in the case that the case should have been submitted to the jury.

From the entire record we are not convinced that the switch lights or signal light were such obstructions that would interfere with a person looking to the northwest, and, as we read this record, we think that a person just before going upon the tracks at this crossing would have a clear unobstructed view for quite a distance to the northwest, before stepping upon the track, and while being in a place of safety. Now, the distance which this track would be thus unobstructed we think fairly appears in this record to be upwards of perhaps 1,200 or 1,500 feet, and at a point where a man would see the tool house would be perhaps further than that; and that where the tool house would obscure the view there would be at least a very considerable distance where the track would be in plain view. So that, at a distance south from the track the deceased, as we construe this testimony, would have to travel some considerable distance with the track in plain view.

Now there is a total lack of evidence in this case that there was any confusion or noises there that would interfere with hearing the rumble of the train or the noise caused by its ap-

proach. The record shows that the deceased was in the possession of his senses, that he was not deficient in hearing and his sight was not defective. So that we have the case of a pedestrian attempting to cross the railroad track between daylight and darkness, with a train approaching, true at an unusual rate of speed, but with the headlights burning and the train lighted, as appears by the record throughout. So that, had he looked, he would have had better opportunity of seeing the lighted train at that hour of the evening than perhaps he would had it been earlier in the evening before the train was lighted. Had he listened, he undoubtedly could have heard it, as there is nothing to indicate here that there was anything to prevent him from hearing.

Now the rule of law is laid down in the case of *Baltimore & Ohio Ry.* v. *McClellan*, 69 Ohio St. 142 [68 N. E. Rep. 816], that a person in full possession of his senses of sight and hearing should exercise them to protect himself from danger when about to cross a known track of a steam railroad at a street crossing. The deceased in this case had crossed the Pennsylvania lines. It appears from this record that he was fully acquainted with the tracks and the surroundings, and that he knew, or must have known, that he was about to cross the tracks of the Baltimore & Ohio Railroad. What, then, was the duty that was incumbent upon him?

Assuming all the time, now, that the defendants were guilty of negligence in running their train at a high and dangerous rate of speed, that they were violating an ordinance, and that they failed to sound any signals of warning, what was the duty of the decedent? In the case of *New York, C. & St. L. Ry.* v. *Kistler*, 66 Ohio St. 326 [64 N. E. Rep. 130], the Supreme Court lays down this rule:

"As between a person about to cross over a railroad at a crossing, and a train of cars approaching such crossing, the train has the right of way. This is so because the person can stop within a few feet, and the train cannot. The looking required before going upon a crossing should usually be just before going upon the track, or so near thereto as to enable the person to get across before a train within the range of his

Schmidt v. Railway.

view of the track, going at the usual rate of speed of fast trains, would reach such crossing."

Now, the record fails to show that the deceased either looked or listened just before going upon the track, and the presumption is that, if he had looked he would have seen, and having seen, he attempted to pass over before the train reached the crossing. It does appear that he was struck when just on the crossing or just about to step upon the track. As a pedestrian, the record shows that he could have seen at least past the tool house, a distance of several hundred feet. The light of the locomotive would be above the switch lights, it would be moving, whereas the switch lights are stationary, and had he looked, he must have seen this moving light and lights of the train, which would have been a warning to enable him to escape before going upon a place of danger.

True, a train passing at this rate of speed would pass over this intervening distance in but a few seconds, but the record seems to establish the fact that he was not yet on the track, and that but a second or two was all that was necessary to enable him to escape the danger.

So that we think that the testimony of the plaintiff in this case and the whole record raises the clear presumption of negligence on his part which directly contributed to his injury, and that there was no testimony offered in the case or by the plaintiff tending to rebut that presumption. That being true, it was the duty of the court to sustain the motion and direct the jury to return a verdict. This is the rule laid down in *Baltimore & Ohio Ry.* v. *McClellan, supra.*

It is contended that there was error in the rejection of testimony sought to be introduced as to the facts that there were cars on the side track which tended to obstruct the view, which testimony was excluded by the trial court. It is of little consequence how much or how little testimony was excluded by the court or whether the testimony thus offered to be introduced had a tendency to establish the facts sought to be proved. If the view that we have taken of the case is sustained by the record, then no prejudice could have intervened, because, even if this testimony had been introduced, there was distance enough

that was unobstructed which would have enabled the deceased to have escaped injury, had he observed the necessary caution that was·required of him in attempting to pass over this crossing.

So that, finding no error in this record to the prejudice of the plaintiff in error, the judgment of the court of common pleas is affirmed with costs and the cause remanded for execution.